### In The

# United States Court Of Appeals
## For The D.C. Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

## v.

## DARRELL NEELY,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

———————

## REPLY BRIEF OF APPELLANT

———————

**Paul F. Enzinna**
**ELLERMAN ENZINNA LEVY PLLC**
**1050 30th Street, NW**
**Washington, DC 20007**
**(202) 753-5553**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT ...................................................................................................... 1

    I.     The District Court Erred in Denying Appellant's Motion
        to Dismiss the Charges Under 18 U.S.C. § 1752(a) ...................... 1

        a.     The § 1752(a) Charges Against Appellant Fail to
             State an Offense ........................................................................ 1

        b.     As Applied Here, § 1752(a) is Unconstitutionally
             Vague .......................................................................................... 6

    II.     The District Court Erred in Denying Appellant's Motion
        to Suppress His Statements .............................................................. 8

    III.    The District Court Erred in Denying Appellant's Motion
        to Change Venue ............................................................................... 9

CONCLUSION ................................................................................................. 13

CERTIFICATE OF COMPLIANCE .................................................................. 14

CERTIFICATE OF SERVICE .......................................................................... 15

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Bouie v. Columbia,*
    378 U.S. 347 (1964) ...................................................................7

*Jackson Purchase Rural Elec. Co-op. Ass'n v. Loc. Union 816,*
    646 F.2d 264 (6th Cir. 1981) ..................................................5

*Loving v. IRS,*
    742 F.3d 1013 (D.C. Cir. 2014) ..............................................1

*Miranda v. Arizona,*
    384 U.S. 436 (1966) ...................................................................8

*Missouri v. Siebert,*
    542 U.S. 600 (2004) ...............................................................8, 9

*Rideau v. Louisiana,*
    373 U.S. 723 (1963) .................................................................11

*Sessions v. Dimaya,*
    584 U.S. 148 (2018) ...................................................................7

*United States v. Bursey,*
    416 F.3d 301 (4th Cir. 2005) ................................................5, 6

*United States v. Granderson,*
    511 U.S. 39 (1994) .....................................................................7

**Statutes:**

18 U.S.C. § 1752........................................................1, 3, 4, 6, 7

18 U.S.C. § 1752(a) .............................................1, 5, 6, 13

18 U.S.C. § 1752(a)(1) ...................................................................9

20 U.S.C. § 76j(a)(1)(H)(ii) .........................................................5

**Regulations:**

31 C.F.R. § 408.1 ..........................................................................3

31 C.F.R. § 408.2(b) ......................................................................3

31 C.F.R. § 408.2(c) ......................................................................3

# ARGUMENT

## I.  The District Court Erred in Denying Appellant's Motion to Dismiss the Charges Under 18 U.S.C. § 1752(a).

### a.  The § 1752(a) Charges Against Appellant Fail to State an Offense.

The government argues that "the 'traditional tools of statutory interpretation—including the statute's text, history, structure, and context,' support the conclusion that an area may be 'restricted' for purposes of § 1752 by an agency other than the Secret Service," and that reading the statute to limit the ability to designate locations as "restricted" would impose an unwarranted Appellant "extra-textual requirement" on the statute.  Gov't Br. at 14-15 (quoting *Loving v. IRS*, 742 F.3d 1013, 1021-22 (D.C. Cir. 2014). But the government focuses only on the statute's text, ignoring its history, structure, and context, and relies on its own "extra-textual requirement" to avoid the absurd results that would follow its own interpretation.

The facile assertion that, as currently written, § 1752 "says nothing about *who* must do the restricting," JA291, ignores the fact that in enacting the statute and in each of its amendments, Congress has clearly understood – and intended – the statute to apply to the Secret Service.  The government argues that Appellant "misreads" the statute as originally enacted, and that

"the original enactment suggests that Congress deliberately *declined* to limit restricted areas to those restricted by the Secret Service." Gov't Br. at 17. But the original iteration of the provision clearly evidences Congress' intent to limit the power to designate areas as "restricted" under the statute – and thereby to control the contours of criminal liability under the statute – to the Secret Service.

The government correctly notes that the original statute explicitly required the Secretary of the Treasury to promulgate regulations specifying the "temporary offices" and "temporary residences" governed by the statute, and did not require the Secretary to promulgate regulations specifying the "posted, cordoned off, or otherwise restricted" areas subject to it. Gov't Br. at 17-18. But rather than reflecting an intent to extend the authority to "restrict" beyond the Secret Service (in the person of the Secretary of the Treasury), the obvious reason for this distinction is the fact that the inherently transitory nature of a "temporary visit" renders the promulgation of regulations impracticable, rather than an intent to broaden the ability to render otherwise legal conduct criminal beyond the Secret Service. Moreover, the statute as originally written specified that the *Secretary of the Treasury* promulgate regulations "governing ingress and

egress to such restricted areas," demonstrating Congress' intent to limit the ability to define the contours of § 1752 to the Secret Service.[1]

The government ignores the legislative history, which makes clear that in amending the statute, Congress has never evinced any intent to remove the authority to "restrict" locations from the Secretary of the Treasury or to vest that authority to any other agency. *See* Appellant's Br. at 11-13. And although the government pays lip service to the statute's "history," Gov't Br. at 14-15, it fails utterly to address the fact that, in the half century between the statute's enactment and the events of January 6, 2021, no court had ever held that the statute applies to any location *not* restricted by the Secret Service, and, in fact, the government never pursued a prosecution based on a "restriction" imposed by anyone other than the Secret Service. *See* Appellant's Br. 16-17.

---

[1] The regulations promulgated by the Secretary of the Treasury pursuant to the original statute further reflected this understanding, specifying that the buildings and grounds "restricted" under § 1752 "[s]hall be that property which each [person protected by the Secret Service] designates for protection by the Secret Service," 31 C.F.R. § 408.1 (2017), and that any necessary "further such description" of "restricted" property "shall be provided by the Secret Service." 31 C.F.R. § 408.2(b)&(c) (2017).

The government's only response to the absurd results that would attend its interpretation of the statute is to impose its own "extra-textual requirement" on the statute. It asserts that:

> Section 1752 does not license concerned private citizens to restrict areas, because it provides no freestanding authority. Instead, an agency or actor needs independent legal authority to restrict the relevant area, whether derived from state or federal law. … [A] private citizen typically has no lawful authority to restrict otherwise public places. And a court can sensibly interpret the general term "restricted" to exclude the theoretical imposition of illegal restrictions by private actors, because interpreting §1752 to encompass such unlawful restrictions would violate "the presumption that courts will not give legal effect to illegal acts."

Gov't Br. at 19-20. Section 1752 contains no language limiting, or purporting to limit its reach to locations "posted, cordoned off, or otherwise restricted" pursuant to authority granted by another statute. And even if it did, this would not avoid the absurd results that would follow the government's reading of the statute. The example provided in Appellant's Brief – concerning a Presidential visit to the Kennedy Center, Appellant's Br. at 13-14 – makes that clear, because the extension of the Secret Service's "restricted" area by Kennedy Center personnel would be authorized by

Congress' authorization of the Kennedy Center Board to provide "security" at the facility.  20 U.S.C. § 76j(a)(1)(H)(ii).[2]

*Finally*, the government misunderstands – and misrepresents – Appellant's citation of *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005). Gov't Br. at 34-35.  Appellant does not suggest that the Fourth Circuit in that case held that §1752 limits the authority to restrict a location to the Secret Service.  The defendant in Bursey was convicted under § 1752(a) for refusing to leave an area that had been "restricted" by the Secret Service, but argued there was no evidence that he committed the offense "willfully and knowingly" because, although he conceded that he knew the area had been restricted by local law enforcement, he had not been told it had been restricted *by the Secret Service*. *Id.* at 308.  The court rejected that argument,

---

[2] The government also argues that its reading would not permit private citizens to define the scope of criminality under the statute because "a private citizen *typically* has no lawful authority to restrict otherwise public places," and courts would not "give legal effect" to such an "illegal act." Gov't Br. at 20 (quoting *Jackson Purchase Rural Elec. Co-op. Ass'n v. Loc. Union 816*, 646 F.2d 264, 268 (6th Cir. 1981)) (emphasis added).  But even if a private citizen lacked statutory authorization to do so, his or her "post[ing]" or "cordon[ing] off" an area larger than the one restricted by the Secret Service for a Presidential visit to the Kennedy Center would not be "illegal," and nothing in the statute, or in any other source identified by the government would bar a prosecution based on an individual's presence in that area.

finding "ample evidence that [the defendant] understood the area to have been restricted by the Secret Service." *Id.* at 309.

If, as the government argues, the power to "restrict" a location under the statute is not limited to the Secret Service, the defendant's admission that he knew the area had been restricted by local police would have sufficed to resolve the question, and the court's analysis of his understanding that the area had been restricted by the Secret Service would have been entirely superfluous. In sum, although the *Bursey* court did not hold that § 1752 limits the authority to "restrict" an area to the Secret Service, its analysis reflects its clear understanding – consistent with the statute's "text, history, structure, and context," that this is the case.

### b. As Applied Here, § 1752(a) is Unconstitutionally Vague.

The government argues that § 1752 is not unconstitutionally vague because, it claims, the statute's "text, context, and history all converge on" the meaning favored by the government. Gov't Br. at 37. But as discussed above, neither the text of § 1752(a), nor its legislative history, give any indication that Congress intended any person or agency other than the Secret Service to have the power to make conduct criminal under the statute by "restricting" a location.

And the government simply ignores § 1752's context and history. Prior to January 6, 2021, the government never pursued a prosecution under the statute based on a "restriction" imposed by anyone other than the Secret Service, and no court ever found such a restriction valid. A new "construction [that] unexpectedly broadens a statute" violates the Constitutional prohibition on *ex post facto* laws, *Bouie v. Columbia*, 378 U.S. 347, 353 (1964), and "leav[es] the people in the dark about what the law demands and allow[s] prosecutors and courts to make it up." *Sessions v. Dimaya*, 584 U.S. 148, 175 (2018) (Gorsuch, J., concurring).

*Finally*, the government argues that the rule of lenity is inapplicable here because "after consulting traditional canons of statutory construction" there is "no ambiguity for the rule of lenity to resolve." Gov't Br. at 39. But here again, those "traditional canons" – including "text, *structure, and history* fail to establish that the government's position is unambiguously correct." *United States v. Granderson*, 511 U.S. 39, 54 (1994) (emphasis added). Therefore, the rule of lenity requires that the uncertainties over the scope of § 1752 should be resolved in Appellant's favor.

**II.    The District Court Erred in Denying Appellant's Motion to Suppress His Statements.**

The government argues that the District Court properly rejected Appellant's claim under *Missouri v. Siebert*, 542 U.S. 600 (2004), because Appellant "pointed to no specific pre-warning incriminating statement, let alone one that was later repeated."  Gov't Br. at 41 (internal quotation marks omitted).  As the District Court wrote:

> The harm identified by *Siebert* was the likelihood that a defendant, having confessed and then been read his *Miranda* warnings, would make the "entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail."

JA307 (quoting *Siebert*, 542 U.S. at 613).  Holding that Appellant failed to alleged that he "confess[ed] or offer[ed] any other incriminating statement," prior to being *Mirandized*, "let alone one that was later 'repeated' in the statements he seeks to have suppressed," the District Court denied the motion. *Id*.

But in his Motion to Suppress, Appellant specifically alleged that after he was arrested and taken into custody on October 18, 2021, "officers and agents engaged [Appellant] in conversation about the J6 activities before he was mirandized."   JA19.   And because Appellant was charged with "enter[ing] or remain[ing] in [the Capitol] or on its grounds,"

18 U.S.C. § 1752(a)(1), any discussion of his activities at the Capitol that day was necessarily a confession. Thus, the District Court plainly erred in holding as a matter of fact that Appellant had failed to allege a post-custody/pre-warning incriminating statement, and it was error for that court to deny the Motion without a hearing.[3]

## III. The District Court Erred in Denying Appellant's Motion to Change Venue.

The government asserts that the survey evidence Appellant proffered to show that the characteristics of the D.C. jury pool supported a presumption of prejudice was "of questionable value." Gov't Br. at 57. But in support of this assertion, the government focuses entirely on what it identifies as a flaw in a single question contained in one survey, and a second question in which a majority of respondents indicated that they could be fair and impartial jurors. *Id.* at 58-59. The government simply ignores the overwhelming majorities of potential D.C. jurors who reported that:

---

[3] The government also argues that because Appellant "does not dispute that he was not in custody" during his March and June 2021 interrogations, any *Siebert* involving those interrogations is misplaced. Gov't Br. at 48. The question whether Appellant was in custody during those interrogations was not resolved by the District Court, which erred in failing to hold a hearing on that question.

- they had made prejudicial prejudgment on issues related to the events of January 6th (91%, as opposed to rates of 49-63% in other jurisdictions),  JA 45;

- they "believe[d] that any individual who was inside the U.S. Capitol on January 6, 2021, should be convicted of insurrection" (nearly 3 in 4), JA109, 113;

- they felt that an individual who had "been inside the Capitol building on January 6, 2021, … should be convicted of obstruction of justice and civil disorder," (nearly 9 in 10), JA109;

- they had "an unfavorable opinion of the 'people arrested for participating in the events at the Capitol on January 6,'" (84%), JA83;

- they prejudged January 6th defendants as guilty, and viewed them as "criminals" (62%) and "white supremacists" (58%), JA87; and

- "they would vote 'guilty' if they were on a jury" in a January 6 case (52%). *Id.*

The government also ignores the clear evidence showing that the events of January 6th were particularly impactful on D.C. residents, 2/3 of whom reported that those events and their aftermath caused an increase in their concern for personal safety.  In sum, a poor choice of words in a single question, and a single question the response to which does not support a presumption of prejudice, do not outweigh the vast quantity of this evidence that does support that presumption.

The government also argues that the quality of media coverage of January 6th has been "far from the 'memorable and prejudicial' televised confession in *Rideau*, which 'was likely imprinted indelibly in the mind of anyone who watched it.'" Gov't Br. at 59-60. Here again, the government simply ignores the "memorable and prejudicial" statements of, for example, Members of Congress (who called participants in the events of January 6th "domestic terrorists and insurrectionists"), the Attorney General (who compared January 6th to the 1995 Oklahoma City bombing), the Speaker of the House (who called the events of January 6th a "terrorist mob attack," "the worst assault on the Capitol since the War of 1812," and "the worst domestic assault on American Democracy since the Civil War." Appellant's Br. at 34-35. The government also ignores the fact that statements like these – and video showing the worst acts of violence that occurred that day – have been repeated in the media almost daily since January 6th, as well as in the nationally televised Congressional hearings that took place over a period of months in 2022. The hyperbolic character of media coverage, and the saturation level of coverage, surely have been "memorable and prejudicial" and "imprinted indelibly" in the minds of those who have observed it, and particularly D.C. residents, who were personally affected by the events of

January 6, and who consume information related to January 6th at rates significantly higher than the populations of other jurisdictions.

*Finally*, the government argues that the passage of almost two years between January 6th and Appellant's trial "diminished the effect of pretrial publicity." Gov't Br. at 61. This assertion wishes away the fact that during that two-year period, potential D.C. jurors were bombarded by continuous daily coverage of January 6th, and in particular, the fact that the House Select Committee on the January 6th Attack held eight public, televised hearings – calling for "stiff consequences" for participants in the events of January 6th – in the year before Appellant's trial, and held a ninth the week after the trial ended. In sum, the passage of time between January 6th and Appellant's trial did little to mitigate the damage done by pretrial publicity; if anything, it exacerbated it.

## CONCLUSION

For the foregoing reasons, the District Court erred in denying Appellant's Motion to Dismiss the charges against him under 18 U.S.C. § 1752(a), his Motion to Suppress his statements, and his Motion to Change Venue.  This Court should reverse.

Dated: June 3, 2024

Respectfully submitted,

*/s/ Paul F. Enzinna*
Paul F. Enzinna

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit requirement set forth in FRAP 27(d)(2) because, excluding the exemptions under Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), it contains <u>2,577 words</u>.

This document complies with the typeface requirements set forth in FRAP 27(d)(1)(E) because it has been prepared in a proportional spaced typeface using Microsoft Word in <u>14 point Palatino</u>.

Dated: June 3, 2024

*/s/ Paul F. Enzinna*
Paul F. Enzinna
ELLERMAN ENZINNA LEVY PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553
penzinna@eellaw.com

*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 3, 2024, a true copy of the foregoing

Brief of Appellant was filed using the CM/ECF system, which will then send

notification of such filing to all counsel of record.

*/s/ Paul F. Enzinna*
Paul F. Enzinna
ELLERMAN ENZINNA LEVY PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553
penzinna@eellaw.com

*Counsel for Appellant*